IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JOHN M. MCCLELLAN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | CIVIL ACTION NO. 09-U-1976-S |
| Plaintiff, | ) | |
| v. | ) ) | |
| REGIONS FINANCIAL CORPORATION, ET AL., | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM IN SUPPORT
## OF ERNST & YOUNG LLP'S MOTION TO DISMISS

Stanley J. Parzen
MAYER BROWN LLP
71 South Wacker
Chicago, Illinois  60606
Tel. (312) 782-0600
Fax. (312) 701-7711

Richard E. Smith
Kenneth O. Simon
Oscar M. Price, IV
CHRISTIAN & SMALL LLP
505 20th Street North, Suite 1800
Birmingham, Alabama 35203
Tel. (205) 795-6588
Fax. (205) 328-7234
Attorneys for Ernst & Young LLP
October 28, 2009

The only claim asserted against Ernst & Young LLP ("E&Y") in this case is time-barred because the complaint was filed more than three years after publication of the E&Y audit reports that the plaintiff asserts were false. Plaintiff claims that E&Y violated Section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9 by allowing allegedly false audit reports to be incorporated into a Proxy Statement issued by Regions Financial Corporation ("Regions") and AmSouth Bancorporation ("AmSouth") on August 17, 2006. The audit reports at issue are E&Y's reports on the 2005 year-end financial statements of Regions and AmSouth, which were published on March 9, 2006 and March 10, 2006. Plaintiff did not file his complaint until October 2, 2009. As the complaint was not filed within three years after publication of the relevant E&Y statements, plaintiff's Section 14(a) claim is time-barred under the Exchange Act's statute of repose and the complaint against E&Y must be dismissed with prejudice since amendment cannot cure the time-bar against plaintiff's claim.[1]

---

[1] The complaint suffers from additional deficiencies that also require dismissal and are included in E&Y's motion to dismiss: (1) failure to satisfy the pleading standard of both Rule 8 and Rule 9(b) by not alleging facts sufficient to establish any plausible basis to believe that E&Y knew, in early 2006, that the economic events of the next three years—which included a global financial crisis unprecedented in our lifetimes—would require Regions to increase its loan loss reserves and write down its goodwill; (2) failure to plead the requisite scienter against an auditor for claims based upon the auditor's opinions; (3) failure to plead loss causation; (4) failure to allege any statements or omissions by E&Y that were false at the time they were made; and (5) failure to comply with the lead plaintiff provision of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(2), which requires plaintiff to file a sworn certification affirming compliance with six

## BACKGROUND

For purposes of this motion to dismiss only, we assume the truth of the factual allegations in the complaint. See *Wilchcombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009). The Court may, however, consider the complete text of documents referenced and quoted in the complaint when deciding the motion. *Id.* at 959.

Regions is a financial holding company that provides "commercial, retail and mortgage banking services," in addition to "financial services in … investment banking, asset management, trust, mutual funds, securities brokerage, insurance and other specialty financing." Cmplt. ¶ 6. In May 2006, Regions and AmSouth, which at the time also provided banking and financial services, announced their intention to merge. Cmplt. ¶ 48. The merger was accomplished through the acquisition of AmSouth by Regions, with each share of AmSouth stock being exchanged for 0.7974 share of Regions' common stock. Cmplt. ¶¶ 49-50. To gain approval for the merger, Regions and AmSouth issued a joint Proxy Statement and prospectus (attached as Exhibit A, "Proxy Stmt.") that was filed with the SEC on August 17, 2006. Cmplt.

---

requirements set out in the statute along with his complaint, see 25 U.S.C. § 78u-4 (i)-(vi). But as explained in the motion to dismiss, plaintiff's complaint is so clearly time-barred that E&Y has limited its initial briefing to that threshold issue. By limiting briefing to this issue, however, E&Y reserves the right to brief the remaining failings of plaintiff's complaint in the event that the Court does not bar the complaint on timeliness grounds.

¶¶ 2, 30.[2]  The Proxy Statement and prospectus announced a special shareholder meeting for October 3, 2006 to vote on the merger.  Proxy Stmt. at Notice of Special Meeting.  In November 2006, Regions completed its acquisition of AmSouth.  Cmplt. ¶ 2.

The Proxy Statement incorporated, with E&Y's consent, E&Y's audit reports on the 2005 year-end financial statements of Regions and AmSouth.[3]  Proxy Stmt. at Ex. 23.1 and 23.2.  By contrast, E&Y did not consent to the Proxy Statement's incorporation of reports of its reviews of AmSouth's quarterly financial statements for the first two quarters of 2006.  Proxy Stmt. at 78.  Instead, the Proxy Statement expressly advised shareholders that E&Y "did not audit and they do not express an opinion on that consolidated interim financial information." *Id.*  The Proxy Statement went on to warn shareholders that "the degree of reliance on [the E&Y quarterly

---

[2]  Despite the fact that he has asserted a claim that the Proxy Statement was misleading, the Plaintiff did not include the allegedly false Proxy Statement with his complaint.  What is more, in a transparent effort to avoid application of the statute of repose, the complaint never identifies the precise date on which the allegedly false Proxy Statement was issued.  The information in the Proxy Statement, including its date of filing, which is reflected on its cover page and elsewhere, is appropriately considered by the Court on this motion to dismiss under controlling Eleventh Circuit law.  See *Wilchcombe*, 555 F.3d at 959.

[3]  E&Y also consented to the inclusion of its reports relating to the internal controls of the companies during the same period, but the only alleged misstatements by E&Y are in the audit reports.  Plaintiff does not claim that E&Y made any misstatements or omissions in the internal control reports.

reviews] should be restricted in light of the limited nature of the review procedures applied." *Id*.

The E&Y audit reports included in the Proxy Statement were originally published on March 9 and March 10, 2006, when Regions' and AmSouth's respective 2005 annual reports were filed. See Exhibit B (SEC website identification of filing date for Regions and AmSouth's respective 2005 10-K reports). E&Y's consents to the inclusion of those reports in the Proxy Statement were dated August 16, 2006. Proxy Stmt. at Ex. 23.1 and 23.2. The Proxy Statement itself was filed on August 17, 2006. Proxy Stmt. Plaintiff filed his complaint more than three years after all of these dates, on October 2, 2009. E&Y is named only in Count I (Cmplt. ¶¶ 112-122), which is based on allegations that defendants solicited approval or permitted their names to be used to solicit approval of the 2006 "merger/acquisition between Regions and AmSouth through the use of a materially misleading joint proxy statement." Cmplt. ¶ 2.

## ARGUMENT

The only claim alleged against E&Y is a claim under Section 14 that E&Y permitted its name to be used in connection with the Proxy Statement. E&Y permitted its name to be used in connection with the Proxy Statement only by inclusion of its audit reports on the 2005 financial statements of Regions and

AmSouth in the Proxy Statement. Those audit reports, however, were first published in March 2006—more than three years before the complaint was filed. And the Proxy Statement itself was filed by Regions and AmSouth in August 2006—also more than three years before the plaintiff filed suit. Regardless of which date is used as a starting point, the claim against E&Y is barred by the three-year statute of repose applicable to Section 14 claims.

## I.     McClellan's Claim Against E&Y Is Time-Barred.

"[C]ourts have recognized for Section 14(a) claims that related and similar causes of action under the Exchange Act have effectively supplied a limitations period of one year after the plaintiff discovers the facts constituting the violation, and *in no event more than three years after such violation.*" *In re iBasis, Inc. Derivative Litig.*, 532 F. Supp. 2d 214, 220 (D. Mass. 2007) (emphasis added) (internal quotation marks omitted) (citing *Westinghouse Elec. Corp. v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993)). The one-year limitation period acts as a statute of limitations while the three-year period acts as a statute of repose. *Id.*[4]

---

[4]     *Sarbanes-Oxley* did not change the statute of limitations or repose for Section 14(a) claims. *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007); *Pedroli ex rel. Microtune, Inc. v. Bartek*, 564 F. Supp. 2d 683, 686-87 (E.D. Tex. 2008) (Sarbanes-Oxley "does not extend limitations or repose for § 14(a) claims"); *In re Keithley Instruments, Inc. Derivative Litig.*, 599 F. Supp. 2d 875, 903 (N.D. Ohio 2008) (same); *Rudolph v. UTstarcom*, 560 F. Supp. 2d 880, 892 (N.D. Cal. 2008) ("every court that has considered the issue" has held Sarbanes-Oxley's extension of certain repose periods "does not apply to claims brought under § 14(a)"); *Spiegel v. Siegel*, 2008 WL 151951, at *2 (S.D. Fla. Jan. 15, 2008) (applying 1-year statute of limitations for Section 14 claim).

The three-year repose period for "[a] claim based on dissemination of false financial statements" begins "when the allegedly false or misleading statement was made." *In re Affiliated Computer Servs. Derivative Litig.*, 540 F. Supp. 2d 695, 703 (N.D. Tex. 2007) (dismissing all Section 14(a) claims because of the three-year repose period); *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 573 (D.N.J. 2002) ("[A]ctions under Section[] … 14(a) of the Exchange Act arise on the date the allegedly false or misleading statement underlying the claim[] was made."). The Supreme Court—in a case under Section 10(b), involving the same statute of repose that applies to Section 14(a)—has also confirmed that "the violation" that triggers running of the statute of repose occurs when the alleged misrepresentation is made. See *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991) ("As there is no dispute that the earliest of plaintiff-respondents' complaints was filed more than three years *after petitioner's alleged misrepresentations*, plaintiff-respondents' claims were untimely.") (emphasis added).

In the case of an auditor, the date "when the allegedly false or misleading statement was made," *Affiliated Computer*, 540 F. Supp. 2d at 703, is the date when the statement was first published—namely, the filing date of the 2005 Regions and AmSouth Forms 10-K in which the audit reports were first made available to the

public.[5]  Thus, the relevant repose period for E&Y runs from the March 9, 2006 for statements made in the audit reports included in the 2005 Regions 10-K and March 10, 2006 for statements made in the audit reports included in the 2005 AmSouth 10-K.  Two decisions issued by the Western District of Kentucky in *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, Civ. Action No. 1:00-CV-124-M, *aff'd on other grounds*, 336 F.3d 495 (6th Cir. 2003), make clear that the statute of repose runs from the initial publication of E&Y's audit reports.  In its December 15, 2000 decision (attached as Exhibit C), the court addressed—and rejected—the plaintiff's theory that "each time Ernst's February 12, 1997 [audit] report was repeated in a later document, or its subsequent use was consented to by [E&Y], a new three year period began."  Ex. C at 15.  Plaintiff argued that the time period began to run from the date of E&Y's last consent, but the court held that, if a misrepresentation was made, it was made on the publication date of the first report and that "[a]ny subsequent republication of that misrepresentation, even if made with Ernst's consent, does not act to trigger a new *Lampf* three year repose period."  *Id.* at

---

[5]   In contrast, for an issuer of a proxy statement, the Section 14(a) violation occurs when a false or misleading proxy statement is filed.  *iBasis*, 532 F. Supp. 2d at 220-21 (measuring statute of respose for Section 14(a) from filing); *Keithley Instruments*, 599 F. Supp. 2d at 903 (same); *In re Verisign, Inc., Derivative Litig.*, 531 F.Supp.2d 1173, 1212 (N.D. Cal. 2007) (same). E&Y's alleged misrepresentations did not occur when the Proxy was filed, because its only statements included in the Proxy are consents to incorporation of its earlier audit reports.  Those consents contain no statements of fact concerning Regions or AmSouth, and Plaintiff thus does not and cannot assert that those consents were themselves false or misleading.

8

18-19. In its October 24, 2001 decision (attached as Ex. D), the *New England Health Care* court reaffirmed its earlier holding and noted that a later consent could not itself be considered a misrepresentation. Ex. C at 2-6.

Under *New England Health Care*, the plaintiff's claim against E&Y in this case was barred by the statute of repose on March 10, 2009—that is to say, three years after E&Y's audit reports were filed on March 9 and March 10, 2006 and thereby became available to the public—nearly seven months before the plaintiff filed his complaint. As stated above, the only statements made by E&Y that were contained in the Proxy Statement were its previously issued audit reports and E&Y's consents to the incorporation of those previously issued audit reports into the Proxy Statement. As *New England Health Care* squarely holds, the fact that an auditor consents to the incorporation of a previously issued audit report in a new document does not re-start the statute of repose period. Instead, the original publication date is deemed to be the date of the alleged violation and the date from which the statute of repose runs.[6]

---

[6] Although plaintiff alleges that AmSouth's quarterly financial statements for the first two quarters of 2006 also falsely reported loan reserves and goodwill (Cmplt. ¶¶ 33, 72), those statements are irrelevant to plaintiff's claim against E&Y. As the Proxy Statement stated explicitly, E&Y "did not audit" those financial statements and did "not express an opinion" on them. Proxy Stmt. at 78. See also *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 154-56 (2d Cir. 2007) (accounting firm not liable for unaudited quarterly financial statements). Moreover, E&Y did not consent to the inclusion in the Proxy Statement of its review reports on those quarterly statements and so cannot be said to have made any statement at all in the Proxy with respect to those quarterly statements. Accordingly, E&Y's name was not used within the meaning of Section 14. Even if those interim statements were relevant to plaintiff's claim against E&Y, the claim would still be time-barred:

Even if the date "when the allegedly false or misleading statement was made," *Affiliated Computer*, 540 F. Supp. 2d at 703, were extended to the date of the Proxy Statement itself, the claim against E&Y would still be untimely. The Proxy Statement was issued on August 17, 2006, more than three years before plaintiff filed his complaint. See *Affiliated Computer*, 540 F. Supp. 2d at 703 (dismissing Section 14(a) claims based on proxy statements issued more than three years before the complaint was filed).

In short, under *any* of the possible choices for the date "when the allegedly false or misleading statement was made," *id.*, plaintiff's claim against E&Y is time-barred.

Plaintiff's allegations about events that occurred long after the Proxy Statement (see, e.g., Cmplt. ¶¶ 31, 33, 87, 91, 93-94, 97) and his suggestion that the "true facts" were "concealed" by defendants (Cmplt. ¶ 110) do not revive his claim. *Lieberman v. Cambridge Partners, LLC*, 432 F.3d 482, 485-86, 487 n.8 (3d Cir. 2005) (applying *Lampf* and affirming dismissal of securities claims under three-year repose period where plaintiff allegedly failed to discover a fraudulent scheme because defendants had "conceal[ed]" it). First, the allegedly false statement supporting a Section 14

---

E&Y's review reports on AmSouth's first two quarters were dated May 5, 2006, and August 4, 2006, respectively—still more than three years before plaintiff's complaint was filed. Proxy Stmt. at 78.

claim must occur by means of a proxy statement. *Pedroli ex rel. Microtune, Inc. v. Bartek*, 564 F. Supp. 2d 683, 687 (E.D. Tex. 2008) ("[t]o state a claim under section 14(a), a plaintiff must allege that: (*1*) *a proxy statement contained* a material misrepresentation or omission") (internal quotation marks omitted) (emphasis added); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005) (same proposition); see also 17 C.F.R. § 240.14a-9(a) ("by means of any proxy statement"). Statements and events occurring *after* the Proxy Statement was issued plainly could not make the Proxy Statement misleading and therefore can do nothing to revive Plaintiff's time-barred claim.

    Second, courts have made clear that the three-year time period for the statute of repose is *not* subject to tolling. Addressing the same statute of limitations at issue here, the Supreme Court ruled in *Lampf* that "the equitable tolling doctrine is fundamentally inconsistent with the 1- and- 3-year structure" in the securities laws. 501 U.S. at 363. Because "the purpose of the 3-year limitation is clearly to serve as a cutoff"—"an outside limit"—the Court "h[e]ld that tolling principles do not apply to that period." *Id.* Accordingly, under the three-year repose period, the "discovery dates" of the alleged wrongdoing "are immaterial." *Lieberman*, 432 F.3d at 487 n.8. As the Third Circuit has explained in affirming the dismissal of Section 14 claims as time-barred, there comes a time "when allowing people to put their wrongful conduct

behind them—and out of the law's reach—is more important than providing those wronged with a legal remedy, even if the victims never had the opportunity to pursue one," so a statute of repose—unlike a statute of limitations—bars suit "'*even if th[e repose] period ends before the plaintiff has suffered a resulting injury.*'" *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199-200 (3d Cir. 2007). See also *Beard v. J.I. Case Co.*, 823 F.2d 1095, 1097 n.1 (7th Cir. 1987) ("a period of repose bars a suit a fixed number of years after an action by the defendant . . . even if this period ends before the plaintiff suffers any injury").

"A statute of repose runs from a fixed date readily determinable by the defendant," thus "serv[ing] the need for finality in certain financial and professional dealings." *Caviness v. Derand Res. Corp.*, 983 F.2d 1295, 1300 n.7 (4th Cir. 1993); see also *Hinkle v. Henderson*, 85 F.3d 298, 301 (7th Cir. 1996) (a statute of repose runs regardless of discovery of the violation, setting "an outer limit within which a cause of action must be brought"). Plaintiff brought his claim well past the outer time limit provided by the Exchange Act and, accordingly, that claim must be dismissed with prejudice.[7]

---

[7] Sarbanes-Oxley did not change the tolling rule for the statute of repose. See, *e.g., Exxon Mobil,* 500 F.3d at 199-200 (applying lack of tolling rule to Section 10(b) claim while using Sarbanes-Oxley repose period); *de la Fuente v. DCI Telecomms., Inc.*, 259 F. Supp. 2d 250, 263 n.9 (S.D.N.Y. 2003) (repose period not subject to equitable tolling; "[t]he Sarbanes-Oxley Act does not change the law regarding equitable tolling—it keeps the same structure of the rule established by *Lampf*, while simply extending the years.").

## CONCLUSION

For the foregoing reasons, the claim against E&Y is clearly barred by the statute of repose. Because amendment cannot cure the time-bar against plaintiff's claims, the Court should dismiss plaintiff's claim against E&Y with prejudice.

October 28, 2009                                  Respectfully submitted,

                                                             ERNST & YOUNG LLP

                                                             By:  /s/
                                                             One of its attorneys

Stanley J. Parzen
MAYER BROWN LLP
71 South Wacker
Chicago, Illinois  60606
Tel. (312) 782-0600
Fax. (312) 701-7711

Richard E. Smith
Kenneth O. Simon
Oscar M. Price, IV
CHRISTIAN & SMALL LLP
505 20th Street North, Suite 1800
Birmingham, Alabama 35203
Tel. (205) 795-6588
Fax. (205) 328-7234
Attorneys for Ernst & Young LLP

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

                                  /s/
                               Kenneth O. Simon